/0

FILED'09 FEB 24 14:54USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOHN G. PEARSON, et al.,

    Plaintiffs,

v.

UNITED STATES DEPARTMENT OF
TRANSPORTATION, et al.,

    Defendants.

Civil No. 07-272-PA

OPINION

**PANNER, Judge.**

    Plaintiffs bring this action for declaratory and injunctive relief against the U.S. Department of Transportation; the Secretary of the Department of Transportation; the Federal Highway Administration (FHWA); and the Administrator of the FHWA. The State of Oregon has intervened as a defendant.

    Plaintiffs contend that defendants violated the National Environmental Protection Act (NEPA) and the federal Department of Transportation Act by failing to prepare an adequate Final

1    - OPINION

Environmental Impact Statement for the South Medford Interchange Improvement Project (the Project).

## DISCUSSION

### I. Laches

The State of Oregon asserts the affirmative equitable defense of laches. I conclude that laches bars plaintiffs' claims.

#### A. Background

In 1997, the Oregon Department of Transportation (ODOT) and the FHWA, working with the City of Medford and the Rogue Valley Council of Governments, started the complex planning process to reduce congestion at the south Medford interchange on Interstate 5. Plaintiffs participated throughout the process, including meeting individually with defendants several times and commenting on the Draft Environmental Impact Statement.

After evaluating alternative proposals, defendants chose the Highland Alternative, which proposed building a new interchange at Highland Drive, about 2,000 feet south of the existing interchange at Barnett Road, and eliminating I-5 access at Barnett Road while retaining the overpass there. Plaintiffs, who live on or near Highland Drive, preferred the construction of a new interchange at South Stage Road and I-5, about one mile south of the existing Barnett Road interchange.

/ / / /

Case 1:07-cv-00272-PA    Document 69    Filed 02/24/09    Page 3 of 14

Plaintiffs sought to prevent the Medford City Council from providing funds for the Project. When that effort failed, plaintiffs supported a ballot initiative that would have required voter approval of highway projects receiving funds from the City of Medford. Voters rejected the initiative.

In winter 2003, defendants announced the expiration of the time for public comments on the Project. Defendants also announced the dates for issuing the Final Environmental Impact Statement (FEIS), and Record of Decision (ROD).

In February 2004, defendants issued the FEIS. Plaintiff Pearson received a copy of the FEIS. In June 2004, defendants issued the ROD. Plaintiffs did not communicate with defendants after issuance of the ROD.

In February 2006, ODOT acquired the final right of way for the Project. In March 2006, ODOT sought bids on the contract for construction of the Project. In April 2006, ODOT notified the contractor that it could proceed with construction. In May 2006, the contractor began work.

On February 23, 2007, plaintiffs filed this action. By then, the Project was 30% complete and more than $20 million had been spent. Thomas Decl. ¶ 9. Plaintiffs did not seek a temporary restraining order.

In December 2007, I granted in part plaintiffs' motion to complete the record. Until October 2008, plaintiffs did not file

3    - OPINION

any other motions or seek relief on the merits.

As of November 19, 2008, the Project was about 75% complete. Construction expenses were then more than $50 million, not including the $25 million spent designing and developing the Project.

Construction on the Project is ongoing. The newly built interchange is open to traffic. ODOT states that construction will be complete by the end of 2009. Thomas Decl. ¶ 11.

### B. Standards

To establish the affirmative equitable defense of laches, defendants must show that plaintiffs did not pursue their claims diligently, and that plaintiffs' lack of diligence prejudiced defendants. Ocean Advocates v. U.S. Army Corps of Engineers, 402 F.3d 846, 862 (9th Cir. 2005).

In determining whether laches applies, prejudice is more important than diligence. See Grand Canyon Trust v. Tucson Elec. Power Co., 391 F.3d 979, 988 (9th Cir. 2004). If the delay does not prejudice the defendant, laches will not apply even when the delay is lengthy and unexcused. Id. Conversely, laches may apply if an unexcused though brief delay causes prejudice. Id.

This court has discretion in deciding whether laches applies. Ocean Advocates, 402 F.3d at 862. Courts rarely apply laches to environmental claims "because the public at-large, and not just the plaintiffs, will be harmed by environmental damage."

4   - OPINION

Klamath Siskiyou Wildlands Center v. Boody, 468 F.3d 549, 555 (9th Cir. 2006) (citation omitted).

### B. Discussion

#### 1. Plaintiffs Were Not Diligent

In determining a party's diligence, the court should consider "(1) whether the party attempted to communicate its position to the agency before filing suit, (2) the nature of the agency response, and (3) the extent of actions, such as preparatory construction, that tend to motivate citizens to investigate legal bases for challenging an agency action." Preservation Coalition, Inc. v. Pierce, 667 F.2d 851, 854 (9th Cir. 1982) (citations omitted).

The first two factors are not relevant here because plaintiffs communicated their position to defendants up to the issuance of the ROD. The third factor, however, weighs against plaintiffs because the issuance of the ROD should have motivated them to bring a legal action.

Plaintiffs contend that the delay should be measured from May 2006, when construction commenced, to February 2007, when plaintiffs filed this action. Plaintiffs note that in Ocean Advocates, the Ninth Circuit stated that it had "held in other cases that delays of eight to ten years did not demonstrate lack of diligence." 402 F.3d at 863. However, the cases mentioned by Ocean Advocates are distinguishable because, unlike here,

5   - OPINION

"litigation commenced close in time to the final agency decision or authorization." Id. (citing Coalition for Canyon Pres. v. Bowers, 632 F.2d 774, 780 (9th Cir. 1989) (plaintiffs brought action within a year of final authorization); Preservation Coalition, Inc. v. Pierce, 667 F.2d at 854-55 (plaintiffs brought action within a year of discovering that challenged action would occur)). The "final agency decision or authorization" here is the issuance of the ROD, not the start of construction. See Oregon Natural Desert Ass'n v. Bureau of Land Management, 531 F.3d 1114, 1139 (9th Cir. 2008) ("Once an EIS's analysis has been solidified in a ROD, an agency has taken final agency action, reviewable under [the Administrative Procedures Act, 5 U.S.C.] § 706(2)(A)."). Issuance of the ROD should have prompted plaintiffs to begin legal proceedings. Instead, plaintiffs delayed for 32 months.

At oral argument, counsel for plaintiffs stated that plaintiffs were exhausted by the administrative process and hoped that the Project would "sit on the shelf." However, plaintiffs have not shown any basis for believing that the fully funded Project would not commence promptly after issuance of the ROD.

Because plaintiffs knew that defendants had issued the ROD, the final agency decision, plaintiffs' unexcused delay of more than two and a half years shows a lack of diligence.

### 2. Defendants Have Been Prejudiced by the Delay

A defendant may show "expectations-based" prejudice "'by showing that it took actions or suffered consequences that it would not have, had the plaintiff brought suit promptly.'" Grand Canyon Trust, 391 F.3d at 988 (quoting Danjaq LLC v. Sony Corp., 263 F.3d 942, 955 (9th Cir. 2001) (citations omitted)). (The other type of prejudice, based on loss of evidence caused by the plaintiff's delay, is not relevant here.) Defendants here have been prejudiced by plaintiffs' lack of diligence. The relief plaintiffs seek has become impracticable because construction on the Project is nearly complete. Similarly, environmental harms, if any, have already occurred.

In Apache Survival Coalition v. United States, 21 F.3d 895 (9th Cir. 1994), the court concluded that laches applied in circumstances similar to those here. The plaintiff there filed the action after construction of the challenged observatory was 35% complete and nearly $4 million had been spent. By the time the plaintiff sought injunctive relief, construction expenses had doubled, and the cost of delaying construction was estimated at almost $11,000 per day. Similarly, here it would not be practical to halt construction while defendants draft a new EIS.

Plaintiffs cite Preservation Coalition, 667 F.2d at 855, where the court noted that "[d]elay may be prejudicial if substantial work has been completed before the suit was brought,

7    - OPINION

but even substantial completion is sometimes insufficient to bar suit." Preservation Coalition is distinguishable because when the plaintiffs there filed suit, no construction had occurred and the challenged project was not close to completion.

City of Davis v. Coleman, 521 F.2d 661, 670 (9th Cir. 1975), is also distinguishable. Although the challenged action there, the construction of a highway interchange, was 50% complete when the case was filed, the plaintiff City could not be faulted for the delay because the applicable law was unsettled and the official agency documents on the project's status were vague and confusing. Here, the applicable law is settled, and the ROD left no doubt that the Project would proceed.

Defendants have established plaintiffs were not diligent and that plaintiffs' lack of diligence prejudiced defendants. I conclude that laches bars plaintiffs' claims.

## II. Merits of Plaintiffs' Claims

Alternatively, I conclude that plaintiffs' claims fail on their merits.

### A. NEPA Claims

Plaintiffs claim that defendants violated NEPA by failing to adequately consider cumulative impacts or reasonable alternatives; by issuing a Final EIS that was not clearly presented, readable, and understandable; and by failing use the best available science.

### 1. Standards

The Administrative Procedures Act (APA) governs judicial review of an agency's action. Under the APA, a court may set aside an agency's action if the action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The Ninth Circuit explained,

> Review under the arbitrary and capricious standard is narrow, and we do not substitute our judgment for that of the agency. Rather we will reverse a decision as arbitrary and capricious only if the agency relied on factors Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, or offered an explanation that runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

Lands Council v. McNair, 537 F.3d 981, 987 (9th Cir. 2008) (en banc) (internal quotations and citations omitted).

### 2. Discussion

#### a. Cumulative Impacts

Plaintiffs contend that defendants' analysis of cumulative impacts improperly failed to include the effects of unfunded but potential projects.

A cumulative impact is "the impact on the environment which results from the incremental impact of the action when added to other past, present, and reasonably foreseeable future actions regardless of what agency . . . or person undertakes such other actions." 40 C.F.R. § 1508.7. "Cumulative impacts of multiple

projects can be significant in different ways. The most obvious way is that the greater total magnitude of the environmental effects . . . may demonstrate by itself that the environmental impact will be significant. Sometimes the total impact from a set of actions may be greater than the sum of the parts." Klamath-Siskiyou Wildlands Ctr. v. BLM, 387 F.3d 989, 994 (9th Cir. 2004).

Here, the FEIS reasonably excluded projects that were not funded and projects *that could* would be redundant of the current Project. Other potential projects cited by plaintiffs are too distant from the Project area to be relevant to the analysis. NEPA does not require that defendants consider every possible project in evaluating cumulative impacts.

### b. Reasonable Alternatives

Plaintiffs contend that the FEIS violates NEPA's requirement that the agency fully consider reasonable alternatives. NEPA requires that defendants "[r]igorously explore and objectively evaluate all reasonable alternatives." 40 C.F.R. § 1502.14(a). Consideration of alternatives is the "heart" of an EIS. Id. § 1502.14. "The 'range of alternatives that must be considered in the EIS need not extend beyond those reasonably related to the purposes of the project.'" Westlands Water Dist. v. U.S. Dep't of Interior, 376 F.3d 853, 868 (9th Cir. 2004) (quoting Laguna Greenbelt, Inc. v. U.S. Dep't of Transp., 42 F.3d 517, 524 (9th

10   - OPINION

Cir. 1994)). "The choice of alternatives is 'bounded by some notion of feasibility' and an agency is not required to consider 'remote and speculative' alternatives." Id. (quoting Vermont Yankee Nuclear Power Corp. v. NRDC, 435 U.S. 519, 551 (1978)). The court reviews an EIS's range of alternatives under the "rule of reason." Id.

Here, plaintiffs argue that the FEIS improperly failed to consider alternatives, especially the South Stage Road Overpass and South Stage Road Interchange (SSRI). Plaintiffs contend that the SSRI would be a reasonable alternative because a third I-5 interchange outside of the Medford urban growth boundary could alleviate future congestion south of the existing South Medford Interchange.

Defendants argue that plaintiffs have not shown that the SSRI would meet the Project's stated purpose, which was improving traffic flow at the existing South Medford Interchange and on Barnett Road. Defendants state that their evaluation showed that the SSRI would not reduce traffic as much as the chosen alternative.

I conclude that defendants properly evaluated a range of alternatives that were reasonably related to the Project. See Westlands Water Dist., 376 F.3d at 868. Plaintiffs have not shown that defendants were arbitrary and capricious in rejecting plaintiffs' preferred alternatives.

11   - OPINION

### c. Readily Understandable

Plaintiffs contend that defendants violated the requirement that an EIS "be concise, clear, and to the point." 40 C.F.R. § 1502.1. "[A]n EIS must be organized and written so as to be readily understandable by governmental decisionmakers and by interested non-professional laypersons likely to be affected by actions taken under the EIS." Oregon Envtl. Council v. Kunzman, 817 F.2d 484, 494 (9th Cir. 1987). The court makes "essentially a factual finding" on whether the EIS is understandable. Id.

Here, the FEIS is not particularly concise, and it can be cumbersome to use. For example, the reader needs a copy of the Draft EIS to fully understand certain chapters of the FEIS.

However, NEPA does not require that an EIS be a model of clarity, brevity, or ease of use. The EIS here was more than adequate for plaintiffs to determine the scope of the Project and to formulate their objections to it.

### d. Best Available Science

Plaintiffs contend that defendants did not properly conduct the computerized traffic simulations.

The court should "conduct a 'particularly deferential review' of an 'agency's predictive judgments about areas that are within the agency's field of discretion and expertise . . . as long as they are reasonable.'" Lands Council, 537 F.3d at 993 (quoting Earthlink, Inc. v. FCC, 462 F.3d 1, 12 (D.C. Cir.

12   - OPINION

2006)). "There is nothing inherently unreliable about the use of models in scientific assessments." Northwest Coalition for Alternatives to Pesticides v. EPA, 544 F.3d 1043, 1048 (9th Cir. 2008). I conclude that plaintiffs have not shown that defendants' computer simulations of traffic patterns were so flawed as to be unreasonable.

### B. Highway Act Claims

Plaintiffs allege that defendants violated section 4(f) of the Department of Transportation Act, 49 U.S.C. § 303(c), because there were reasonable and prudent alternatives to the use of properties connected to the Bear Creek parks; because defendants failed to minimize harm to the parks; and because defendants failed to use the best available science.

#### 1. Standards

Federally funded highway projects must comply with section 4(f) of the Act. North Idaho Cmty. Action Network v. U.S. Dep't of Transp., 545 F.3d 1147, 1158 (9th Cir. 2008) (per curiam). Unlike NEPA, section 4(f) "imposes a substantive mandate." Id.

An agency may approve a project requiring the use of a park, recreation area, or wildlife refuge only if "(1) there is no prudent and feasible alternative to using that land; and (2) the program or project includes all possible planning to minimize harm to the park, recreation area, wildlife and waterfowl refuge, or historic site resulting from the use." 49 U.S.C. § 303(c).

13   - OPINION

Plaintiffs initially argued that their preferred alternative would not affect Bear Creek Park. Plaintiffs now concede that their preferred alternative would impact the creek and the proposed Bear Creek Greenway trail.

Plaintiffs have failed to show that, given the choices available, defendants had any reasonable and feasible alternative to using park land. The record indicates that the Project will affect only about half an acre of park lands. I conclude that defendants have ensured that the Project's impacts on park lands will be as minimal as reasonably possible.

Plaintiffs' section 4(f) claim regarding best available science fails for the reasons that the similar NEPA claim fails. Plaintiffs have not shown a violation of section 4(f).

### CONCLUSION

Plaintiffs' claims are barred by laches, and fail on the merits.

IT IS SO ORDERED.

DATED this 24 day of February, 2009

*[signature]*
OWEN M. PANNER
United States District Judge

14   - OPINION